**In re ST. RITA'S ASSOCIATES PRIVATE PLACEMENT, L.P., Debtor.**

**Bankruptcy No. 96–13052 B.**

United States Bankruptcy Court, W.D. New York.

Jan. 16, 1998.

Harter, Secrest & Emery (Raymond L. Fink, of counsel), Buffalo, NY, for Objectant.

Damon & Morey LLP (William F. Savino, Marjorie A. Bialy, of counsel), Buffalo, NY, for Respondent.

CARL L. BUCKI, Bankruptcy Judge.

On September 16, 1996, this Court approved the appointment of Damon & Morey LLP as counsel for St. Rita's Associates Private Placement, LP, the debtor herein. For nearly a year thereafter, Damon & Morey directed the debtor through the difficult obstacles of Chapter 11. Upon completion of its services, the firm filed its final application for the allowance of fees and disbursements totaling $99,868.49. Although the debtor has achieved its quest for plan confirmation, it contends that the requested allowance is excessive and should be substantially reduced.

Damon & Morey acknowledges two errors in its application: that the rate charged for one of its associates is ten dollars per hour more than was agreed, and that the firm should not have charged for 3.9 hours of effort to secure waivers of potential conflicts of interest. With these adjustments, the firm has reduced its requested allowance to the sum of $93,879.99. Nonetheless, the debtor persists in vigorously opposing this lesser amount. The Court has reviewed the debtor's written objections, and has presided over three days of testimony and argument. In addition to its general objections, the debtor specifically attacks more than 200 time entries. For ease of presentation, the Court has organized the debtor's objections into the following nine conceptual areas:

■ 1. *Implied or Quasi Contract:* The debtor contends that Damon & Morey should be held to the terms of an implied contract that would limit its fees to a sum no greater than $60,000. At the evidentiary hearing, the debtor relied upon the testimony of Joseph M. Jayson, the president of the general partner of the debtor. He stated that prior to the law firm's engagement, attorneys from Damon & Morey had estimated that legal fees would likely total between $20,000 and $40,000, but would not exceed $60,000. Furthermore, Mr. Jayson asserted that although he had requested monthly billing summaries, the only such statement arrived after the attorneys had exceeded their original estimate of time charges. Noting that the applicant had failed to prepare an engagement letter, the debtor's new counsel argued that Damon & Morey had thereby assumed the risk of ambiguity with respect to fee disputes.

William F. Savino, the partner responsible for this file at Damon & Morey, contradicted the statements of the debtor's principals. He asserted that $60,000 was only a good faith estimate of the anticipated charges, that all parties had clearly understood that the actual fee could indeed be higher, that unanticipated problems necessitated the rendering of additional services, and that despite the absence of written billing summaries, his client was fully appraised of the value of the services that Damon & Morey was providing. Conceding the absence of an engagement letter, Mr. Savino contended that the formality was not required and, under the circumstances, was unnecessary.

The ideal relationship between attorney and client is one which is mutually beneficial. In exchange for sound legal representation, the client commits to pay a reasonable compensation to his counsel. As in the present instance, fee disputes may relate to either or both sides of this equation. Clients may question either the quality of representation or the reasonableness of the resulting charges. The purpose of an engagement letter is to clarify the expectations of clients and counsel, with respect to such issues as the scope of services, the timetable for their delivery, and the charges which must ultimately be paid. Such clarifications help to define standards that might otherwise become the subject of dispute.

The debtor correctly notes that a well crafted engagement letter will serve to avoid misunderstandings between attorneys and their clients. However, no magic attaches to the mere title of such an instrument. Rather, the critical goal is to memorialize the terms of an attorney's engagement, prior to the actual rendering of service. Such is also precisely the purpose of the application for appointment of counsel pursuant to section 327 of the Bankruptcy Code.

Section 327 requires that the Bankruptcy Court approve the employment of an attorney by the trustee or debtor in possession. Setting the conditions for this approval is Bankruptcy Rule 2014. It provides that the application for employment of counsel "shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, [and] any proposed arrangement for compensation...." To the extent that the arrangement for compensation was to include a monetary limitation, the application for appointment of counsel should have reported such a provision. In this instance, it did not.

On behalf of the debtor, Joseph M. Jayson signed the application for authority to employ counsel on July 26, 1996. Absent good reason to the contrary, parties are to be bound to the effect of such voluntary signiture. Moreover, in this instance, the presence of debtor's in-house counsel provided further assurance that Mr. Jayson would have given this application his due consideration. With regard to a cap on fees, the silence of the application is inconsistent with that testimony of Mr. Jayson which is the basis of the debtor's claim of an implied contract. In contrast, the application was careful to disclose that Joseph M. Jayson had personally guaranteed the fees of Damon & Morey. Interestingly, the guarantee agreement also lacks any reference to a limitation on fees.

The requirements of Bankruptcy Rule 2014 serve to clarify in advance the terms and conditions for the employment of counsel and other professionals. Thus, in a bankruptcy proceeding, the application for appointment of counsel will fulfill the purpose and objective of a retainer agreement. In the absence of any reference in the employment application to a limitation of fees, this Court must presume that the debtor has agreed to pay the fair and reasonable value of services rendered. Having presented no compelling evidence of a cap on the legal fees of Damon & Morey, the debtor has failed to demonstrate an implied contract for terms other than as set forth in the employment application.

Damon & Morey could have avoided much misunderstanding if it had honored its client's request for monthly billing summaries. Although such regular communication is the preferred procedure, the testimony establishes that in this instance, the debtor was generally aware of its liability for legal ser-

vices. The Court finds persuasive the testimony of counsel from Damon & Morey, that extraordinary circumstances compelled the expenditure of more time than the parties had originally anticipated. In particular, counsel noted the inability to secure substitute financing as a primary reason for the gap between projected and actual services. Satisfied with the firm's explanations, the Court will allow reasonable compensation for all necessary services, without the limitation of any other cap on fees.

■ 2. *Duplicate Appearances of Counsel:* The debtor has identified 94.1 hours of time which allegedly involve a duplication of services by attorneys at Damon & Morey. Of this amount, 61.6 hours were occasions during which two attorneys were present with principals of the debtor at meetings or other proceedings. The debtor argues that either one of the attorneys could have provided adequate representation, and that accordingly, the requested allowance for this time should be reduced by approximately half.

All of the supposed duplications involved the same two attorneys: a male partner and a female associate. Both testified that from the outset of their representation, male principals of the debtor made suggestive remarks to the associate. For example, an officer of the debtor's general partner would regularly comment about the associate's clothing and physical appearance. Some of these remarks were particularized to certain anatomical features. Members of the debtor's management team suggested that the associate would make an ideal date for one of them. The associate testified that she found these comments to be particularly upsetting, due to the fact that she is married and has two children. The Court can understand the associate's special reason for apprehension, but views sexually inappropriate statements to be reprehensible under all circumstances, irrespective of the marital status of the person to whom they are directed. So egregious was the harassment that the debtor's in-house counsel warned its principals to refrain from making any more improper declarations.

The Damon & Morey partner testified that upon learning about the harassment of his associate, he promptly and unequivocally asked that such conduct be stopped. Nonetheless, the debtor's principals persisted with at least some of their verbal indiscretions. Because the associate desired to continue her work on the case, the partner deemed it necessary to attend all meetings between the associate and representatives of the client.

The debtor now contends that the bankruptcy estate should not bear the burden and cost of double representation. It argues that for any meeting at which the responsible partner was present, the associate was simply not needed. The debtor urges that even if harassment were present, counsel is obliged to employ that remedy which is least costly to the estate. In its view, the proper response should have been to reassign the associate to a different file, so as to avoid any recurrence of the problem without need for duplication of services.

Section 330(a)(4)(A) establishes the rule applicable for all proceedings in Chapter 11, that "the court shall not allow compensation for(i) unnecessary duplication of services; or (ii) services that are not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." Notably, this prohibition extends only to compensation for those duplications which are unnecessary or unlikely to benefit the estate. In the view of this Court, some appropriate response to the debtor's harassment was not only necessary, but essential to beneficial representation by Damon & Morey. Under the circumstances, a part of one such appropriate response could include the partner's presence at all meetings between the associate and any member of the debtor's management team. In reviewing requests for compensation, this Court will not displace the reasonable exercise of professional judgment. Satisfied that the harassment compelled an appropriate response, the Court finds that no unnecessary duplication occurred from the presence of two attorneys at meetings with the debtor. Due to the risk of further harassment, this presence became an appropriate component of an overall representation that was, as required by section 330(a)(4)(A), "reasonably likely to benefit the debtor's estate" and "necessary to the administration of the case."

This Court rejects the suggestion that Damon & Morey should have reassigned its

associate to a different, less troublesome case. The practice of law holds no room for sexual harassment. A female associate has every right to practice in any area in which she is competent. A law firm has every right to enjoy the benefit of her productivity. In a particular assignment, the associate may find opportunities for advancement, professional development, or personal satisfaction. The firm may properly desire to continue an assignment because it represents an efficient use of resources, because the assignment satisfies the firm's development strategies, or merely because it is the right thing to do. A mandate for reassignment would unjustly punish the victim of harassment, and provides no effective solution to a problem of serious concern to the integrity of our legal system.

Every attorney who practices before this Court is a professional whose personal dignity is deserving of respect at all times. Reasonable steps to protect that dignity are as appropriate an expenditure of resources as is legal research and the careful proof reading of papers. In the present instance, the debtor's plan sets a fixed rate of distribution on account of unsecured claims. Thus, legal fees become an expense which the debtor's equity holders will ultimately pay. Because current management was itself responsible for the harassing statements, the debtor is justly charged with the expense of meeting with two attorneys. But compensation for these services would still have been properly allowed, even if creditors were indirectly paying the costs of administration, or even if someone other than management had caused the harassing statements. As contemplated by section 330(a) of the Bankruptcy Code, "necessary services" must include reasonable measures to assure a safe and harassment-free environment for all legal personnel. Such steps are a proper cost of doing business which, if particularized to an individual file, are fully compensable in the bankruptcy proceeding. This decision is not to suggest that the occurrence of harassment will ever create an unlimited license for the unfettered duplication of services. Rather, this Court merely holds that it will allow compensation for a reasonable and appropriate response, such as that taken in the present instance.

3. *Other Duplications of Services:* The debtor alleges that in addition to attendance at meetings between counsel and members of the debtor's management team, further duplications of service occurred with respect to another 32.5 hours. Part of this time represents occasions in which two attorneys were coordinating their work with one another on the same date. Such efforts are an appropriate accommodation to the demands of a large practice, and will be compensated. Nonetheless, the Court does find unnecessary duplication in the participation by two attorneys in telephone conferences on November 5, 1996, and on January 23, February 3, and February 13 of 1997. Altogether, these entries represent 4.5 hours spent by the associate whose efforts duplicated those of the partner. Accordingly, the Court will disallow compensation for this time, having a value of $517.50.

4. *Preparation of Disclosure Statements and Reorganization Plans:* The debtor has identified 123.8 hours of services that relate to the preparation of disclosure statements and plans of reorganization. In addition, counsel conducted extensive research on issues of plan confirmation, particularly with regard to procedures for a "cram-down" under 11 U.S.C. § 1129(b). The debtor claims that this time is excessive, and should be disallowed in substantial part. The Court has reviewed each of the entries at issue. A portion of this time (8.1 hours) represents duplications that were necessitated by the debtor's harassing conduct. Individually, each of the entries appears to be reasonable. Collectively, however, the total effort exceeds the amount of time that the Court would have expected for preparation of a disclosure statement and plan in a case having the present level of complexity. Accordingly, the Court will reduce the requested allowance by $2,600.

5. *Legal Education vs. Research:* The debtor asks that the court disallow compensation for portions of entries totaling 27.5 hours, on the basis that they include attorney education. A fine distinction exists between legal research and generalized legal education. No attorney will ever possess sufficient knowledge to avoid the imperative for legal research at one time or another. Com-

pensation is always appropriate for necessary research that specifically relates to the subject of the representation. On the other hand, counsel is expected to maintain a basic level of skill, and will receive no special compensation for fundamental or routine continuing education. In this instance, the Court finds that all but one of the questioned entries represents appropriate research in this complex case. The entry of 1.9 hours on August 15, 1996, however, appears to involve the review of an update service. Relating to current developments of law, this effort was educational in nature, and will be disallowed for a value of $218.50.

6. *Preparation of Schedules and Use of Paraprofessionals:* Damon & Morey seeks compensation for 38.5 hours of associate time devoted to the preparation of the debtor's bankruptcy petition and the related schedules and statement of affairs. Contending that a para-professional could more efficiently have performed these tasks, the debtor urges the Court to limit its allowance to the normal paralegal charge for a similar expenditure of time. In response, the partner in charge of this file at Damon & Morey asserts his view that paralegals generally lack the skills needed to prepare a bankruptcy petition and supporting documents.

Paraprofessionals are not licensed practitioners of the law. Rather, their tasks are purely ancillary to those of the attorney under whose direct supervision they must work. Although section 330(a)(1) of the Bankruptcy Code allows compensation for the services performed by a paraprofessional whom an attorney employs, nothing in the Code commands the use of such staff. Section 327 allows the employment of "attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons." As in the present instance, the debtor employs an attorney, not an independent paraprofessional. When it approved the Order authorizing Damon & Morey's employment, this Court considered only the firm's qualification to serve as attorneys, and not the qualifications or even the presence of any paraprofessionals. Being a matter of no relevance to selection of counsel, the absence of paralegals within the firm structure cannot thereafter serve as a basis for denial of compensation.

■ The prefix "para" derives from the Greek preposition meaning "beside" or "along side of." Without professional license, paralegals work "along side of" the attorneys appointed to serve as counsel. In recognition of their non-professional status, paralegals require careful supervision by the attorney who may choose to use their services. Whether a task is appropriate for assignment to a paralegal is a matter of professional judgment. In exercising this judgment, attorneys must consider the assignment's complexity, the skill and experience of the available staff, and the attorneys' own level of comfort regarding their ability to exercise supervision. This Court will not substitute its own judgment for that of the attorneys who are charged with responsibility for a debtor's representation. When attorneys believe that their existing paralegal staff lacks sufficient skill to complete a particular task, that judgment is to be respected, and is not to become the basis for challenge of the attorney's fee application.

■ Although expressed as a dispute involving the use of paralegals, the debtor's objection does highlight a more fundamental problem with the allowance of time for preparation of schedules. The greater concern is not whether paralegals should have performed this particular work, but whether the law firm should have performed this amount of service at all. Typically, the task of collecting information for the statement of affairs and schedules is one which the debtor and its staff are to perform with appropriate guidance of counsel. At the hearing, members of the debtor's management team testified that the debtor's in-house counsel had prepared an initial draft of the schedules. Counsel from Damon & Morey responded that the initial draft contained several deficiencies, and in particular, did not address the status of debenture holders. Nonetheless, the schedules do not appear to be overwhelmingly complex. After taking into account the greater efficiency which would be expected from experienced counsel, the Court finds that preparation of the petition and schedules should have required no more than thirty hours of attorney time. Accordingly, the fee request will be reduced by $977.50, to allow only for that amount of time.

7. *Compensation for Secretarial Functions:* Attorneys are always free to perform secretarial functions, but will not receive compensation at attorney rates for those tasks. The debtor correctly objects to entries for filing work on July 31, 1996, for preparation of mailings on January 30, 1997, and for the faxing of documents on September 30 and October 10, 1996. Altogether, this time totals 1.8 hours having a value of $207.

8. *Appointment of Damon & Morey:* The debtor objects to 10.1 hours which Damon & Morey devoted to the resolution of conflicts and the finalization of its own appointment as general counsel. In response, the firm has already waived voluntarily its claim relative to 3.9 hours to resolve conflict issues, but asserts that the balance of its request is routine and should be allowed.

Section 327 of the Bankruptcy Code requires that a debtor in possession obtain Court approval for the retention of counsel. For this reason, debtor's counsel is properly compensated for those efforts that serve only to obtain such approval. For example, this Court has always allowed compensation for the preparation of the application for appointment. A waiver of conflicts, however, is mandated not to fulfill a unique requirement of the Bankruptcy Code, but under generally applicable standards of representation. Being not a component of but a prelude to representation, expenditures of time to arrange such written waivers are not compensable. Damon & Morey has correctly withdrawn any claim for time expended to secure waivers of conflicts of interest from its pre-existing clients. Once those conflicts were resolved, however, the character of Damon & Morey's activity changed to that of satisfying the mandate for Court approval under 11 U.S.C. § 327. The order of appointment operated not to resolve conflicts, but to confirm that any conflict had already been resolved. Aside from the 3.9 hours for which Damon & Morey no longer seeks compensation, this area of dispute appears to involve either the drafting of an application for appointment of counsel or preparation for a hearing on that application. The first of these tasks is routine, while the second was required by the Court. Because both were performed to fulfill the special requirements of section 327, the debtor shall compensate Damon & Morey for the remaining 6.2 hours of disputed entries.

9. *Unnecessary Time Expenditures:* The balance of the debtor's objections relate primarily to the expenditure of time that is alleged to be excessive or unnecessary. Although most of the requested allowances are appropriate, some entries do not warrant approval of the full amount that is requested.

Damon & Morey expended approximately 30 hours on the selection of special counsel to handle a tax dispute. Beginning on August 12, 1996, attorneys at Damon & Morey spent five hours to prepare an application for appointment of special counsel. Then in early September, Damon & Morey reevaluated this approach, abandoned the application for appointment of special counsel, and instead, moved to assume an executory contract under which the debtor had employed that same special counsel prior to the bankruptcy filing. The Court agrees with the debtor that a careful analysis of the possible approaches should have occurred at the outset, prior to preparation of papers. Furthermore, by the time Damon & Morey decided to change its approach, time constraints necessitated that counsel move to shorten the time for notice of the motion to assume the executory contract. Such a motion should not have been necessary, and accordingly is not compensable. Altogether, with regard to the appointment of special counsel, the Court will disallow 8.2 hours of time.

The debtor correctly objects to the allowance of 1.2 hours of time on September 5, 1996, to prepare a motion that was never filed. Rather, counsel should have completed their analysis of appropriate strategies prior to assigning an associate to prepare the necessary papers. An entry for two-tenths of an hour on December 23, 1996, appears to relate to a different file. Entries for 2.7 hours on March 19, 1997, for 1.5 hours on March 25, 1997, and for 1.8 hours on April 3, 1997, involve the examination of deposition transcripts. Counsel had taken these depositions in anticipation of objections to the debtor's Plan of Reorganization. By the time that the associate at Damon & Morey actually under-

took to review the transcripts, a settlement was already in prospect. The Court agrees with the debtor that Damon & Morey should have arranged to defer the transcript review until the outcome of the settlement had become known. Because the controversy was indeed settled, the review of the transcripts was ultimately unnecessary for representation of the debtor.

The Court also agrees that the applicant devoted a somewhat excessive amount of time to the services described on the entries for October 7 and 30, and for November 15, 25, and 26 of 1996, and in 1997, on January 3, 8, and 22. After allowing for that portion of the request that is reasonable, the court will deny compensation for 10.6 hours.

Altogether, this ninth area of objection has identified unnecessary efforts totaling 26.2 hours and having a value of $3,057. The Court has reviewed all of the debtor's other objections, and finds them to be either without merit or resolved by reason of the applicant's voluntary adjustment to its fee request.

■ *Disbursements:* Damon & Morey's fee application includes a request for reimbursement of advances for disbursements totaling $3,835.99. Among these advances are photocopy charges of $2,073. At the firm's standard charge of ten cents per page, this sum represents more than 20,000 photocopies. The decisions of this Court are based on the weight of argument, not on the weight of paper. Many of the pleadings in this case contain unnecessary exhibits. Of particular concern are excessively long notices to unsecured creditors. For example, Damon & Morey expended $210.50 to make for each creditor a copy of the nineteen page notice of motion and application for its own appointment as counsel. A more concise notice could have provided adequate information for creditors, but with far less risk that the volume of paper might cause the notice to be ignored. Finding the amount of copying to be unnecessary and perhaps counterproductive, the Court will reduce the allowance for disbursements by $200.

### Calculation of Final Allowance

In calculating the final allowance for Damon & Morey, this Court begins with the reduced sum that the firm now requests, in the amount of 93,879.99. Against this claim, the Court will require a reduction of $517.50, by reason of the third objection relating to duplication of services; of a further $2,600, by reason of the fourth objection relating to preparation of the Plan and Disclosure Statement; of a further $218.50, by reason of the fifth objection relating to legal education; of a further $977.50, by reason of the sixth objection relating to preparation of schedules; of a further $207, by reason of the seventh objection relating to requests for compensation for secretary functions; of a further $3,057, by reason of the ninth objection relating to unnecessary time expenditures; and of a further $200 by reason of the Court's concerns regarding disbursements. Accordingly, after taking into account all of the foregoing, the Court will grant to Damon & Morey a final allowance for fees and disbursements in the total amount of $86,102.49.

So Ordered.